UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KOJO SHATA CALLENDER,

                                Plaintiff,

                -v.-

NEW YORK STATE DEPARTMENT OF
MOTOR VEHICLES,

                                Defendant.

---

23 Civ. 9314 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff Kojo Shata Callender ("Callender" or "Plaintiff") brings this *pro se* action against the New York State Department of Motor Vehicles (the "DMV" or "Defendant") alleging claims of gender- and race-based discrimination in violation of (i) Title VII of the Civil Rights Act of 1964, *codified as amended*, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"); (ii) 42 U.S.C. § 1981 ("Section 1981"); and (iii) the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 to 297.  Before the Court is Defendant's motion to dismiss the operative Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons set forth in the remainder of this Opinion, the Court grants Defendant's motion in full, dismissing Plaintiff's Title VII claims with prejudice and his remaining claims without prejudice.

## BACKGROUND[1]

### A.    Factual Background

#### 1.    The Parties

Defendant DMV is an administrative agency of the State of New York. (Def. Br. 5). Plaintiff is a former employee of the DMV. (Compl. 1-3). He was originally hired by the DMV in 2006 and continued to be employed by the agency until his resignation in December 2023. (McGarry Decl., Ex. 3).

#### 2.    Plaintiff's Discrimination Claims

Plaintiff's claims center on the adjudication of a sexual harassment case brought by the DMV against him. By way of background, in May 2018, the DMV notified Plaintiff by letter that it sought to terminate his employment based on three reported incidents of sexual harassment, as well as "inappropriate[ ]" use of a cellphone at a workstation. (McGarry Decl., Ex. 1 ("Notice of Discipline") (addressed to Plaintiff and dated May 4, 2018)). Two of

---

[1]    This Opinion draws its facts primarily from Plaintiff's Second Amended Complaint ("SAC" (Dkt. #19)), the well-pleaded allegations of which are taken as true for purposes of this Opinion. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009). The Court also considers Plaintiff's previous pleadings, including Plaintiff's First Amended Complaint ("FAC" (Dkt. #18)) and initial Complaint ("Compl." (Dkt. #1)), to the extent that these pleadings contain relevant allegations that are not contained in the SAC. The Court considers all three pleadings in light of its obligation to liberally construe the "pleadings and briefs submitted by *pro se* litigants," *Bertin* v. *United States*, 478 F.3d 489, 491 (2d Cir. 2007), and its adherence to the Second Circuit's guidance to read "such submissions to raise the strongest arguments they suggest," *id.* (citation and internal quotation marks omitted). The Court also relies, as appropriate, on certain of the exhibits attached to the Declaration of Kevin McGarry ("McGarry Decl., Ex. [ ]" (Dkt. #22)), each of which is incorporated by reference in the SAC. *See DiFolco* v. *MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that on a motion to dismiss, courts may consider documents incorporated by reference and documents integral to a complaint).

For ease of reference, the Court refers to Defendant's memorandum of law in support of its motion to dismiss as "Def. Br." (Dkt. #21); to Plaintiff's memorandum of law in opposition to Defendant's motion as "Pl. Opp." (Dkt. #25); and to Defendant's reply memorandum of law as "Def. Reply" (Dkt. #28).

the alleged incidents of sexual harassment dealt with Plaintiff's treatment of a coworker identified as "U.O." and one related to conduct directed at a coworker identified as "A.S." (*Id.*). Charges 1 and 3 alleged, respectively, that Plaintiff inappropriately rubbed the back and shoulders of coworker U.O. in November 2017, and that Plaintiff inappropriately put his hand in U.O.'s hair despite her expressed disapproval in January 2018. (*Id.* at 2). Charge 2 accused Plaintiff of rubbing the back and/or shoulders of coworker A.S. in January 2018. (*Id.*). Finally, Charge 4 accused Plaintiff of violating the DMV's policy by playing music on his phone at his workstation. (*Id.*). The Notice of Discipline further informed Plaintiff that he had a right to dispute these charges and that he was entitled to representation by his union, the Civil Service Employees Association (the "CSEA"), at every stage of his disciplinary proceeding. (*Id.* at 1).

On July 28, 2022, an expedited arbitration was held via Zoom between the DMV and the CSEA, who represented Plaintiff throughout the proceeding. (McGarry Decl., Ex. 2 ("Arbitration Decision")). The next day, the arbitrator, Jay M. Siegel (the "Arbitrator"), issued his written opinion in which he found Plaintiff guilty of Charges 1, 3, and 4 in the Notice of Discipline. (*Id.* at 3). In particular, the Arbitrator found that U.O. had credibly testified about Plaintiff's alleged conduct towards her. (*Id.* at 2). However, the Arbitrator found that the DMV had failed to meet its burden of proof as to the claims in Charge 2 because the DMV had only presented hearsay evidence and failed to offer direct testimony. (*Id.*). The Arbitrator further found, based on "positive and negative elements" of Plaintiff's record, that a suspension of five weeks, without pay,

was the appropriate remedy — rather than termination of employment.  (*Id.*).

On August 3, 2022, the DMV informed Plaintiff that he would be "suspended

without pay effective beginning of business August 4, 2022, through close of

business September 7, 2022."  (*Id.* at 5).

      On April 7, 2023, Plaintiff filed a charge of discrimination with the Equal

Employment Opportunity Commission (the "EEOC"), claiming that he had been

discriminated against based on "Race" and "Sex."  (Compl. 6; *see also* McGarry

Decl., Ex. C).  In his EEOC complaint, Plaintiff identified August 3, 2022 (the

date of his suspension), as the date of the "most recent job action" that Plaintiff

considered discriminatory.  (McGarry Decl., Ex. C).  Plaintiff explained that he

believed he had been "falsely accused of harassing a coworker," and that the

"investigator" had lied to the Arbitrator when she stated that "someone

confessed to her [that] they saw [Plaintiff] harassing the accuser."  (*Id.*).

Plaintiff further alleged that he had been working in the same DMV location

since 2006, and that his "countless requests for transfer" had been ignored,

while "other[ ] [employees' requests] were granted."  (*Id.*).  On August 29, 2023,

Plaintiff received a letter from the U.S. Department of Justice, Civil Rights

Division, stating that the EEOC would not be able to "investigate and conciliate

that charge within the 180 days of the date the Commission assumed

jurisdiction over the charge," and thus Plaintiff had the "right to institute a civil

action."  (Compl. 8).

      This suit followed.  Plaintiff filed the initial Complaint on October 20,

2023.  (Compl.).  In his pleadings, Plaintiff reiterates his belief that he was

falsely accused of harassment.  Specifically, he alleges that his coworker lied in the Zoom hearing, when she claimed that Plaintiff sexually harassed her. (SAC 5).  Moreover, Plaintiff alleges that the DMV's investigator, identified as Lisa DiCocco, failed to conduct a "fair and thorough investigation."  (*Id.*). Plaintiff claims that the DMV's investigator should have consulted video evidence, which Plaintiff argues would have conclusively refuted the allegations lodged against him.  (*Id.* at 6).  Instead, Plaintiff alleges that Ms. DiCocco provided fabricated testimony and incorrectly told the Arbitrator that someone had witnessed Plaintiff's harassment of his coworker.  (*Id.*).  As a result of the DMV's actions, Plaintiff alleges that he was forced to leave the DMV after 17 years of employment.  (*Id.*).  As in his EEOC complaint, Plaintiff also raises claims related to his "right to be transferred to work in the borough" in which he resides.  (FAC 6).  Plaintiff states that despite applying for transfer many times, his transfer requests were repeatedly ignored.  (*Id.*; *see also* Compl. 6). Meanwhile, Plaintiff alleges that other, less senior coworkers were regularly promoted and transferred.  (FAC 6).

## B.    Procedural Background

As mentioned above, Plaintiff filed his initial complaint in this action on October 20, 2023.  (Dkt. #1).  On March 11, 2024, Defendant filed a pre-motion letter regarding its anticipated motion to dismiss Plaintiff's Complaint.  (Dkt. #12).  In response to this letter, the Court issued an order setting a schedule for Defendant's anticipated motion to dismiss, which schedule included time for Plaintiff to file an amended complaint.  (Dkt. #14).  The Court also

appended the Southern District of New York's "Amended Complaint" form and a brochure for the *pro se* clinic offered by the New York Legal Assistance Group ("NYLAG") to its Order.  (*Id.*).

On or about August 23, 2024, the *Pro Se* Office of the Southern District of New York received a copy of Plaintiff's FAC.  (Dkt. #18).  However, the FAC was not docketed until September 12, 2024.  On September 10, 2024, because the FAC had yet to appear on the docket, Defendant submitted a letter to the Court, advising the Court that Plaintiff had failed to file an amended complaint and inquiring about next steps in the case.  (Dkt. #15).  On September 11, 2024, the Court issued an order that provided Plaintiff "a final opportunity to amend his complaint."  (Dkt. #17).  The Court provided Plaintiff with another amended complaint form and a brochure for NYLAG's *pro se* clinic; it further advised Plaintiff about the free and low-cost legal services to *pro se* litigants provided by the City Bar Justice Center's clinic.  (*Id.*).  On September 25, 2025, in accordance with the Court's order, Plaintiff filed the SAC.  (Dkt. #19).

On October 25, 2024, Defendant filed its motion to dismiss the SAC. (Dkt. #20-22).  Plaintiff was instructed to file any opposition to the motion to dismiss on or before November 25, 2024.  (Dkt. #17).  However, because no opposition to the motion to dismiss was received, the Court, *sua sponte*, issued an Order on December 5, 2024, providing Plaintiff with an extension of his deadline to oppose the motion to dismiss.  (Dkt. #24).  Plaintiff was instructed to file any opposition to the motion to dismiss on or before December 30, 2024. (*Id.*).  Plaintiff filed such an opposition on December 27, 2024.  (Dkt. #25).  On

6

January 27, 2025, Defendant filed its reply in further support of its motion to dismiss.  (Dkt. #28).

## DISCUSSION

**A.    Applicable Law**

### 1.    Federal Rule of Civil Procedure 12(b)(1)

Defendant argues that this Court lacks jurisdiction to consider certain of Plaintiff's claims and moves for dismissal of those claims pursuant to Federal Rule of Civil Procedure 12(b)(1), which permits a party to move to dismiss a complaint for "lack of subject-matter jurisdiction."  Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Lyons* v. *Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  In resolving a Rule 12(b)(1) motion, "the district court must take all uncontroverted facts in the complaint ... as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Fountain* v. *Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (quoting *Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014)).  "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Id.* (quoting *Makarova*, 201 F.3d at 113).

### 2.    Federal Rule of Civil Procedure 12(b)(6)

Defendant also moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  When considering a motion to dismiss under Rule 12(b)(6),

a court must "draw all reasonable inferences in [p]laintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotations marks omitted) (citing *Twombly*, 550 U.S. at 570)).

That said, a court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)). "Where a complaint

pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

This same standard applies to litigants who proceed *pro se*. While the Court is obligated to construe *pro se* complaints liberally — a standard that applies with even greater force "when the plaintiff's civil rights are at issue," *Jackson* v. *N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin* v. *McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)) — "*pro se* status 'does not exempt a party from compliance with the relevant rules of procedural and substantive law,'" *Triestman* v. *Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Traguth* v. *Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Accordingly, to survive a Rule 12(b)(6) motion, a *pro se* plaintiff's factual allegations still must at least "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. And even in the *pro se* context, a court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon*, 517 F.3d at 149 (internal quotation marks omitted) (quoting *Smith*, 291 F.3d at 240).

Finally, on a motion to dismiss, "[t]he Court may consider any written instrument attached to the [c]omplaint as an exhibit, any statements or documents incorporated by reference in the [c]omplaint, documents that are 'integral' to the [c]omplaint even if they are not incorporated by reference, and matters of which judicial notice may be taken." *Donoghue* v. *Gad*, No. 21 Civ. 7182 (KPF), 2022 WL 3156181, at *2 (S.D.N.Y. Aug. 8, 2022) (citing *Chambers*

v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

## B.    Analysis

Defendant seeks dismissal of the SAC in its entirety.  The Court proceeds by addressing each of Defendant's arguments in turn, and ultimately agrees that Plaintiff's claims cannot stand because of either a lack of jurisdiction or an insurmountable failure to plead a viable claim.  While the Court finds that certain of Plaintiff's federal claims should be dismissed with prejudice, it finds that the remaining claims should be dismissed without prejudice, such that Plaintiff's state and local claims could be renewed in a court that has the requisite jurisdiction.

### 1.    Plaintiff Cannot Bring Claims Against the DMV Under Section 1981, Section 1983, the NYSHRL, or the NYCHRL

#### a.    Section 1981

In Plaintiff's initial complaint, filed using the Court's Employment Discrimination Complaint form, Plaintiff asserted a claim under 42 U.S.C. § 1981, alleging employment discrimination on the basis of race.  (*See* Compl. at 4 (writing "Native American" in the space provided for a Section 1981 claim)). Section 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts … as is enjoyed by white citizens."  42 U.S.C. § 1981(a). Accordingly, Section 1981 prohibits discrimination "on account of [a person's] race, ancestry, or ethnic characteristics."  *Zemsky* v. *City of New York*, 821 F.2d 148, 150 (2d Cir. 1987).

However, Plaintiff faces a threshold issue when attempting to assert this claim. In *Duplan* v. *City of New York*, the Second Circuit held that "[Section] 1981 does not provide a separate private right of action against state actors." 888 F.3d 612, 621 (2d Cir. 2018). In reaching this conclusion, the Second Circuit noted that Section 1983 already provided a remedy against state actors and, therefore, "there is no reason to infer from the rights-conferring language of § 1981(c) that it creates an additional, and duplicative, remedy." *Id.* at 620-21; *see also Smalls* v. *Collins*, 10 F.4th 117, 145 (2d Cir. 2021) (explaining that "42 U.S.C. § 1983 provides the sole cause of action available against state actors alleged to have violated § 1981" (quoting *Duplan*, 888 F.3d at 616)). Because the DMV is indisputably a state actor, the Court must dismiss all claims brought pursuant to Section 1981 for lack of jurisdiction. *See Gonzalez* v. *City of New York*, 377 F. Supp. 3d 273, 284 (S.D.N.Y. 2019) (dismissing claims brought under Section 1981 against the City of New York and state actors); *see also Peck* v. *County of Onondaga, N.Y.*, 563 F. Supp. 3d 18, 20 (N.D.N.Y. 2021) ("Because the County and all its employees are inarguably state actors, the Court considered itself bound to dismiss [plaintiff's] § 1981 claims.").[2]

---

[2]    Given the absence of jurisdiction, any dismissal pursuant to Rule 12(b)(1) would be without prejudice. *See Kelsey* v. *Kessel*, No. 24-1105, 2025 WL 1324213, at *3 (2d Cir. May 7, 2025) (summary order) ("The Eleventh Amendment is a 'jurisdictional bar,' *Vega* v. *Semple*, 963 F.3d 259, 284 (2d Cir. 2020), and dismissals for lack of jurisdiction are by their nature 'without prejudice,' *MSP Recovery Claims, Series LLC* v. *Hereford Ins. Co.*, 66 F.4th 77, 91 (2d Cir. 2023)").

In light of *Duplan*, courts frequently construe a claim brought pursuant to Section 1981 as a claim under Section 1983. *See, e.g.*, *Quinones* v. *City of Binghamton*, 997 F.3d 461, 468 n.4 (2d Cir. 2021) ("This Court has thus construed a plaintiff's claims against a municipality, incorrectly brought under section 1981 alone, 'as § 1983 claims.'" (quoting *Duplan*, 888 F.3d at 616)); *Royall* v. *City of Beacon*, No. 24 Civ. 3 (KMK), 2024 WL 4266546, at *11 (S.D.N.Y. Sept. 23, 2024) ("[T]he Court considers Plaintiff's § 1981 claims under § 1983, as other courts have done in the wake of *Duplan*."). Doing so here, however, does not benefit Plaintiff. As noted, this case has been brought exclusively against the DMV, which is a state actor. The Eleventh Amendment to the U.S. Constitution precludes federal courts from hearing damages actions against state actors absent waiver or valid abrogation of state sovereign immunity. *Dean* v. *Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 193 (2d Cir. 2015). As Congress did not abrogate the states' immunity under the Eleventh Amendment when enacting Section 1983, Section 1983 "contain[s] no such authorization for the award of money damages against the states." *Trotman* v. *Palisades Interstate Park Comm'n*, 557 F.2d 35, 38 (2d Cir. 1997). Indeed, "[a] state's Eleventh Amendment protection from suit extends to its agencies and departments," which indisputably includes the DMV. *Morningside Supermarket Corp.* v. *N.Y. State Dep't of Health*, 432 F. Supp. 2d 334, 338 (S.D.N.Y. 2006); *see also McMillan* v. *N.Y. State Bd. of Elections*, 449 F. App'x 79, 80 (2d Cir. 2011) (summary order) (affirming dismissal under the Eleventh Amendment of Section 1983 claims against state agency); *Quiroz* v.

*Fla. State Dep't of Child. & Fam. Servs.*, No. 23 Civ. 832 (LTS), 2023 WL 2788083, at *3 (S.D.N.Y. Apr. 3, 2023) ("Because all of the named defendants are state agencies entitled to Eleventh Amendment immunity from suit in federal court for claims under Section 1983, Plaintiff's Section 1983 claims against all defendants must be dismissed.").  Accordingly, even when construing Plaintiff's claim as one brought pursuant to Section 1983, Plaintiff's claim against the DMV cannot succeed.

### b.    The NYSHRL

Plaintiff's claims under the NYSHRL face similar shortcomings.  As with Section 1983, the Eleventh Amendment prevents a plaintiff from bringing a claim against the DMV for violations of the NYSHRL.  In this regard, the Second Circuit has explained, "Congress has not abrogated, and New York has not waived, its sovereign immunity from claims brought under … NYSHRL." *Iwelu* v. *N.Y. State Office of Mental Health*, No. 22-3096, 2024 WL 2175938, at *2 (2d Cir. May 15, 2024) (summary order) (citing *Richardson* v. *N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 432, 449 (2d Cir. 1999), *abrogated on other grounds*, *Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53 (2006)).  Because New York has not consented to suit in federal court under the NYSHRL, Plaintiff's NYSHRL claim against Defendant must also be dismissed for lack of jurisdiction.  *See Chak* v. *N.Y. State Dep't of Educ.*, No. 23 Civ. 2361 (LDH) (LB), 2024 WL 4635203, at *3 (E.D.N.Y. Oct. 31, 2024) (dismissing a NYSHRL claim against the New York Department of Education on Eleventh Amendment grounds); *Quadir* v. *N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 537-38

13

(S.D.N.Y. Aug. 19, 2014) (finding that a cause of action under the NYSHRL

"runs aground on sovereign immunity" because New York has not waived its

Eleventh Amendment immunity for NYSHRL suits in federal court); *Jackson* v.

*N.Y. State Dep't of Labor*, 709 F. Supp. 2d 218, 225-26 (S.D.N.Y. 2010)

(dismissing a claim against a state agency because the "State of New York has

not consented to suit in federal court through NYSHRL").  Having dismissed

Plaintiff's claims under Section 1981, Section 1983, and the NYSHRL[3] on

jurisdictional issues, the Court turns to the merits of Plaintiff's remaining

federal claim.

### 2.    Plaintiff Fails to State a Claim Under Title VII

### a.    Applicable Law

Plaintiff's claims under Title VII arise from two allegedly adverse

employment actions: (i) the DMV's decision to suspend Plaintiff for his alleged

---

[3]    To the extent the Court reads Plaintiff's SAC to raise a claim under the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-134 (the "NYCHRL"), that, too, would be barred by Eleventh Amendment sovereign immunity.  *See Iwelu* v. *N.Y. State Office of Mental Health*, No. 22-3096, 2024 WL 2175938, at *2 (2d Cir. May 15, 2024) (summary order) ("Congress has not abrogated, and New York has not waived, its sovereign immunity from claims brought under ... [the] NYCHRL.");  *accord Feingold* v. *New York*, 366 F.3d 138, 149 (2d Cir. 2004).

Defendant asks the Court to assume supplemental jurisdiction to decide Plaintiff's state and local claims in a manner that permits their dismissal with prejudice.  (*See* Def. Br. 23-24; Def. Reply 10-11).  The Court has evaluated such claims and found them to be jurisdictionally lacking — hence their dismissal without prejudice.  To the extent Defendant is asking the Court to assume that Plaintiff's claims are being asserted against a DMV employee over whom the Court might have jurisdiction, such that a dismissal would be on the merits and with prejudice, the Court declines the invitation.  *Cf. Oliveras* v. *United States*, 371 F. Supp. 3d 105, 113-14 (S.D.N.Y. 2019) (citing *Cornwell* v. *Credit Suisse Grp.*, 666 F. Supp. 2d 381, 385-86 (S.D.N.Y. 2009)) ("[A]bsent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further.");  *Norex Petroleum Ltd.* v. *Access Indus., Inc.*, 540 F. Supp. 2d 438, 449 (S.D.N.Y. 2007) (dismissal for lack of jurisdiction "moots, and thus terminates, all other pending motions").

harassment of two female co-workers; and (ii) the DMV's failure to grant Plaintiff's transfer requests.  Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race ... [or] sex."  42 U.S.C. § 2000e-2(a)(1).  Ordinarily, discrimination claims under Title VII are analyzed under the burden-shifting framework of *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792 (1973).  *See Tolbert* v. *Smith*, 790 F.3d 427, 434 (2d Cir. 2015).  Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination.  *See Holcomb* v. *Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008).  To do so, the plaintiff must show that "[i] he belonged to a protected class; [ii] he was qualified for the position he held; [iii] he suffered an adverse employment action; and [iv] the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown* v. *City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb*, 521 F.3d at 138).  The burden of establishing a *prima facie* case is "minimal."  *Lenzi* v. *Systemax, Inc.*, 944 F.3d 97, 113 (2d Cir. 2019).

At the motion to dismiss stage, however, a plaintiff "is not required to plead a *prima facie* case under *McDonnell Douglas*[.]"  *Vega* v. *Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015).  Instead, "[t]he facts alleged must give plausible support to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation."  *Littlejohn* v. *City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).  For employment discrimination

claims under Title VII, "a plaintiff must plausibly allege that [i] the employer took adverse action against him and [ii] his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Vega*, 801 F.3d at 86; *see Zoulas* v. *N.Y.C. Dep't of Educ.*, 400 F. Supp. 3d 25, 51 (S.D.N.Y. 2019). A plaintiff may satisfy this standard by "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87. Short of direct evidence, "what must be plausibly supported by the facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has *at least minimal support* for the proposition that the employer was *motivated by discriminatory intent*." *Littlejohn*, 795 F.3d at 311 (emphases added). In other words, the facts alleged "need only give plausible support to a minimal inference of discriminatory motivation." *Id.* Here, Defendant primarily contests whether Plaintiff sufficiently alleges the requisite discriminatory motive.

### b. Plaintiff's Fails to Plead a Claim for Discrimination

### i. DMV's Suspension of Plaintiff

As noted, Plaintiff's pleadings center on the DMV's efforts to terminate Plaintiff for his alleged "sexual harassment" of two female coworkers. (*See, e.g.*, SAC 5 (denying the sexual harassment allegations); Compl. 3 (noting under his Title VII claim that he was "falsely charged with sexual harassment")). In addition to contesting the charges themselves, Plaintiff raises concerns about the manner in which the DMV investigated these accusations and presented

them to the Arbitrator.  (*See, e.g.*, SAC 5 (alleging that the investigator "only used her authority to find all the dirt that she could on [Plaintiff] to further convince the judge that [Plaintiff] should be fired or disciplined")).  Despite three attempts to plead viable discrimination claims, however, the Court finds that Plaintiff fails to allege facts that give rise to a plausible inference of a discriminatory motive.  Put plainly, Plaintiff has not provided *any* facts to support an inference that Defendant's actions were motivated, at least in part, by animus toward Plaintiff's race or gender.

There are various ways in which a plaintiff may provide the "minimal support" required to plausibly allege, at the pleading stage, that an "employer was motivated by discriminatory intent."  *Vega*, 801 F.3d at 86-87 (citing *Littlejohn*, 795 F.3d at 311); *see also Lenzi*, 944 F.3d at 107 (explaining that a plaintiff need only plead facts that plausibly allege that the "motive to discriminate was *one of the employer's motives*, even if the employer also had other lawful motives that were causative in the employer's decision").  "An inference of discrimination can arise from circumstances including … the employer's criticism of the plaintiff's performance in ethnically degrading terms[,] or its invidious comments about others in the employee's protected group[,] more favorable treatment of employees not in the protected group[,] or the sequence of events leading to" the alleged adverse action.  *Littlejohn*, 795 F.3d at 312 (citation and internal quotation marks omitted).  Moreover, a plaintiff need not prove (or plead) that "the causal link between injury and wrong is so close that the injury would not have occurred but for the act."

17

*Lenzi*, 944 F.3d at 107 (quoting *Univ. of Tex. Sw. Med. Ctr.* v. *Nassar*, 570 U.S. 338 (2013)).

Plaintiff's allegations fail to satisfy even this minimal pleading standard. Plaintiff alleges, *inter alia*, that he did not sexually harass any colleague, that the DMV's investigator was unfairly focused on obtaining his termination, that the arbitration proceeding was unfair, and that the DMV failed to obtain exculpatory evidence. (Pl. Opp. 1). In his opposition to the motion to dismiss, Plaintiff describes his claim as one of "being treated unfair[ly] by the [DMV]." (*Id.*). But nowhere does Plaintiff allege that Defendant took any action against him *because of* his race or gender. Nor does Plaintiff allege that any DMV employee ever made an invidious comment about his race or gender or implied that the charges were brought against Plaintiff because of his race or gender. "Plaintiff's dissatisfaction with the adequacy of [the DMV's] investigation [and the arbitration] — even if objectively warranted — is insufficient to support an inference of discrimination." *Cooper* v. *Templeton*, 629 F. Supp. 3d 223, 233 (S.D.N.Y. 2022); *accord Jones* v. *Gen. Bd. of Glob. Ministries of United Methodist Church*, No. 96 Civ. 5462 (HB), 1997 WL 458790, at *2 (S.D.N.Y. Aug. 11, 1997) ("While such a showing may prove that the investigation was poorly conducted and that plaintiff was unfairly discharged, it does not raise an inference of discrimination based on race or sex."). Courts routinely dismiss discrimination claims, such as this one, where the plaintiff's allegations fail to suggest discriminatory intent based upon membership in a protected class. *See, e.g.*, *Patane* v. *Clark*, 508 F.3d 106, 112 n.3 (2d Cir. 2007) (determining

that the plaintiff "failed to allege even the basic elements of a discriminatory action claim" because she failed to plead any adverse action taken based upon her gender); *Samuel* v. *Bellevue Hosp. Ctr.*, 366 F. App'x 206, 207 (2d Cir. 2010) (summary order) (affirming dismissal of employment discrimination claim because plaintiff "failed to allege sufficient facts to render plausible his conclusory assertion that the defendants discriminated against him on the basis of his membership in a protected class").

Moreover, courts in this Circuit have found that receiving an allegation of sexual misconduct or racism, even if false, is insufficient to constitute discrimination under Title VII.  Put simply, "[a] false accusation of sexual misconduct is not sex discrimination merely because it deals with 'sex' as a topic."  *Ying* v. *City of New York*, No. 10 Civ. 4990 (CBA) (SMG), 2011 WL 6337666, at *2 (E.D.N.Y. Dec. 19, 2011).  Accordingly, even if it were true that Plaintiff was wrongly accused of sexual harassment, and even if Plaintiff did in fact suffer adverse employment consequences as a result of those accusations, nothing in the SAC suggests that DMV's conduct was motivated by animus toward Plaintiff's gender (or race).  *See Jordan* v. *City of N.Y. Hum. Res. Admin.*, No. 08 Civ. 1041 (JG) (LB), 2010 WL 3034682, at *4 (E.D.N.Y. Aug. 1, 2010) ("[Plaintiff's] complaint, it seems, is that he was fired after being falsely accused of sexual misconduct, not that he was terminated 'because of [his] sex.'  42 U.S.C. § 2000e-2(a)(1).  Even if the allegations of misconduct against [Plaintiff] were fabricated and the disciplinary process reached an erroneous conclusion, those facts standing alone would not provide a basis for relief in federal

19

court."); *cf. Cooper* v. *Franklin Templeton Invs.*, No. 22-2763, 2023 WL 3882977, at *3 (2d Cir. June 8, 2023) (summary order) ("Defendants' statements made no mention of Plaintiff's race, and even to the extent they could be read as accusing Plaintiff of being a racist, 'a statement that someone is a "racist," while potentially indicating unfair dislike, does not indicate that the object of the statement is being rejected because of his race.'" (quoting *Maraschiello* v. *City of Buffalo Police Dep't*, 709 F.3d 87, 97 (2d Cir. 2013) ("'Racism' is not race, and discrimination on the basis of alleged racism is not the same as discrimination on the basis of race."))).  As Defendant points out, to hold otherwise risks transforming "every employment discipline imposed for sexual harassment into an actionable claim for sex discrimination by the disciplined employee." (Def. Br. 17).  Accordingly, Plaintiff fails to state a claim for discrimination based on the sexual harassment charges and his ultimate suspension from the DMV.

> ii.    **DMV's Denial of Plaintiff's Transfer Requests**

As with the allegations related to Plaintiff's suspension, Plaintiff fails to allege that he was denied a transfer based on his race or gender.  In the FAC, Plaintiff alleges that he was denied his "rights to be transferred to work in the borough in which [he] resides." (FAC 6).  Plaintiff claims that, despite applying to transfer many times, he was denied transfer while other "co-workers [were] constantly being promoted and transferred [even though such co-workers had] less seniority." (*Id.*; *see also* Pl. Opp. 1).

Once again, Plaintiff fails to allege facts giving rise to a plausible inference that his race or gender was a motivating factor in DMV's decision not to grant his transfer request.  Plaintiff's sole statement about this aspect of his claim in his opposition to the motion to dismiss is that "it's unacceptable that Lisa [DiCocco] was given so much authority over my life as I had to apply for a transfer over [five] times through her never to be answered while I watched other coworkers granted transfer frequently."  (Pl. Opp. 1).  Even if this assertion were true, however, Plaintiff does not state a claim for discrimination. Plaintiff does not allege any facts to support a plausible inference that Ms. DiCocco's action (or lack thereof) was motivated at least in part by animus toward Plaintiff based on his race or sex.  *See Cruz* v. *Loc. 32BJ*, No. 22 Civ. 3068 (PGG) (SDA), 2024 WL 4357036, at *10 (S.D.N.Y. Sept. 30, 2024) (dismissing a Title VII claim where plaintiff failed to allege discriminatory animus); *Saunders* v. *N.Y. Convention Ctr. Operating Corp.*, No. 20 Civ. 5805 (GHW), 2022 WL 3577773, at *5 (S.D.N.Y. Aug. 19, 2022) (dismissing a Title VII claim where "the allegations [we]re conclusory and devoid of facts that would give rise to even a minimal inference of discriminatory animus").

Moreover, Plaintiff does not allege that similarly situated employees were treated differently.  While it is well established that "[a] plaintiff may support an inference of race [or gender] discrimination by demonstrating that similarly situated employees of a different race [or gender] were treated more favorably," *Norville* v. *Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999), "[i]n order to make such a showing, the plaintiff must compare herself to employees who

are 'similarly situated in all material respects,'" *id.* (quoting *Shumway* v. *United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)).  *See also Bernardi* v. *N.Y. State Dep't of Corr.*, No. 19 Civ. 11867 (KMK), 2021 WL 1999159, at *10 (S.D.N.Y. May 19, 2021).  Here, "Plaintiff has not met his burden of offering similarly situated employees outside of his protected class."  *Id.* at *10 (quoting *Wooding* v. *Winthrop Univ. Hosp.*, No. 16 Civ. 4477 (ADS), 2017 WL 2559942, at *10 (E.D.N.Y. June 12, 2017)).  He does not identify or describe any particular coworkers who were transferred, nor does he allege any facts regarding their positions, job titles, supervisors or other factors that may have been relevant to such a transfer decision.  *See, e.g.*, *Henry* v. *NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 409 (S.D.N.Y. 2014) (dismissing plaintiff's gender discrimination claims because "the Amended Complaint does not allege that any *similarly situated* male employee received more favorable treatment than [plaintiff] — the Amended Complaint fails to identify, let alone describe, any purported comparator" (emphasis in original)).  Plaintiff merely states that those with "less seniority" were granted transfers — a wholly conclusory statement that fails to show, as required to raise a disparate treatment claim, that Plaintiff "was similarly situated in all material respects to the individuals with whom [ ]he seeks to compare [him]self, including 'whether the plaintiff and those [he maintains] were similarly situated were subject to the same workplace standards.'"  *Pattanayak* v. *Mastercard Inc.*, No. 22-1411, 2023 WL 2358826, at *2 (2d Cir. Mar. 6, 2023) (summary order) (quoting *Brown* v. *Daikin Am., Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)).  Accordingly, Plaintiff fails to state a claim

22

for gender or race discrimination under Title VII, and these claims must be dismissed.[4]

### c.    Plaintiff's Title VII Claims Related to His Suspension Are Time-Barred

Defendant further submits, in the alternative, that Plaintiff's claims should be dismiss because they are time-barred.  (Def. Br. 20).  The Court agrees that certain of Plaintiff's Title VII claims are untimely, and, thus, even if Plaintiff had stated a plausible discrimination claim (and he has not), the Court would dismiss the claims as time-barred.

Defendant correctly points out that to timely pursue a claim under Title VII, a plaintiff must file a claim with the EEOC "within three hundred days after the alleged unlawful employment practice occurred."  42 U.S.C. § 2000e-5(e)(1); *see also Sims* v. *City of New York*, No. 08 Civ. 5965 (JGK), 2010 WL 3825720, at *6 (S.D.N.Y. Sept. 30, 2010).  Any claim that is not filed in a timely fashion is procedurally barred.  And this 300-day limitation period begins to run when the plaintiff knows, or should know, of the alleged discriminatory act.  *See Morse* v. *Univ. of Vt.*, 973 F.2d 122, 125 (2d Cir. 1992); *see also Van Zant* v. *KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996) (holding that

---

[4]    While the Court dismissed any putative Section 1983 claim on jurisdictional grounds, it briefly notes that even if such a claim were not barred by sovereign immunity, the Court would dismiss Plaintiff's Section 1983 claims based on Plaintiff's failure to show discriminatory animus.  The causation standard for a Section 1983 claim is even higher than that for a Title VII claim and requires a plaintiff to show that "discriminatory intent was a 'but-for' cause of the adverse employment action."  *Naumovski* v. *Norris*, 934 F.3d 200, 214 (2d Cir. 2019).  This more rigorous "but-for" standard is applied at the pleading stage.  *See Walker* v. *Triborough Bridge & Tunnel Auth.*, No. 21 Civ. 474 (VEC), 2021 WL 5401483, at *4 (S.D.N.Y. Nov. 18, 2021).  Accordingly, for the same reasons that Plaintiff fails to establish discriminatory animus in the Title VII context, Plaintiff fails to allege discriminatory animus under Section 1983.

timeliness is measured from the date the employee receives notice of the
discriminatory decision).  Accordingly, Defendant argues that Plaintiff's 300-
day limitation period began when Plaintiff received the Notice of Discipline on
May 4, 2018, which informed Plaintiff that DMV sought to terminate his
employment due to his alleged sexual harassment of U.O. and A.S.  (Def.
Br. 21).  Because Plaintiff did not file his EEOC charge until April 7, 2023 —
long after the 300-day window had expired — Defendant maintains that
Plaintiff's claims are barred.  (*Id.*).  The Court agrees that, based on the facts
alleged, the statute of limitations provides yet another ground for dismissal of
Plaintiff's claims as they relate to Plaintiff's suspension from the DMV.

It is well established that the 300-day clock for the statute of limitations
begins when the employer informs an employee of its intent to take the adverse
action that the employee claims was discriminatory.  *See Nat'l R.R. Passenger
Corp.* v. *Morgan*, 536 U.S. 101, 112 (2002).  The mere "existence [or even
utilization] of grievance procedures that might conceivably reverse a
termination decision does not serve to delay the commencement of the
limitations period."  *Dykstra* v. *Wyeth Pharms., Inc.*, No. 08 Civ. 7432 (CS),
2010 WL 8906889, at *4 (S.D.N.Y. Sept. 16, 2010) (collecting cases), *aff'd*, 454
F. App'x 20 (2d Cir. 2012) (summary order); *see also Hale* v. *N.Y. State Dep't of
Mental Health*, 621 F. Supp. 941, 942 (S.D.N.Y. 1985) (holding it is "well-settled
that the existence and utilization by plaintiff of grievance procedures does not
toll the running of Title VII's limitations period," and that the limitations period
begins to run when plaintiff is notified of the discharge, as that is the allegedly

discriminatory act).  Here, the alleged discriminatory action was the DMV's
termination of Plaintiff, and Plaintiff was notified of this act through the Notice
of Discipline.  The mere fact that Plaintiff then sought to challenge this decision
through an arbitration proceeding is not sufficient to toll the limitations period.
*See Cherry* v. *City of New York*, 381 F. App'x 57, 58-59 (2d Cir. 2010)
(summary order) (finding claim untimely even though plaintiff had submitted
complaints through the state agency's grievance procedures and through his
union).  Accordingly, because Plaintiff failed to file his EEOC complaint within
300 days after this allegedly unlawful act, his allegations are untimely.

Although Plaintiff's claims related to his suspension are time-barred
under Title VII, the Court briefly notes that his allegations related to his
transfer requests are not.  The pleadings in this action do not indicate when
such transfer requests were made, and thus there is no basis for evaluating the
statute of limitations.  Moreover, while Plaintiff received his Notice of Discipline
on May 4, 2018, the record indicates that Plaintiff continued to be employed by
the DMV while he appealed that employment decision.  (McGarry Decl., Ex. 2
(noting that Plaintiff had been "continuously employed by DMV" since 2017)).
Accordingly, when viewing the facts in the light most favorable to Plaintiff, as
the Court must on a motion to dismiss, the Court cannot make a
determination regarding the timeliness of these allegations.  *Faber,* 648 F.3d at
104.  However, to the extent the underlying conduct related to Plaintiff's
transfer requests occurred 300 days prior to Plaintiff's EEOC charge, such
claims would be time-barred.  *See Golubovych* v. *Saks 5th Ave., Inc.*, No. 22 Civ.

9923 (MKV), 2024 WL 4135251, at *9 (S.D.N.Y. Sept. 10, 2024) (finding that

even if certain claims survived, those that arose "300 days prior to [p]laintiff's

filing of her EEOC Charge, [we]re time barred").[5]

### d. The Continuing Violation Doctrine and Equitable Tolling Do Not Render Plaintiff's Title VII Claims Timely

And while Plaintiff did not raise the issue, the Court briefly notes that

neither the continuing violation doctrine nor equitable tolling can cure the

untimely claims in the SAC.  Under the continuing violation exception, if a

plaintiff files a timely "EEOC charge as to any incident of discrimination in

furtherance of an ongoing policy of discrimination, all claims or acts of

discrimination under that policy will be timely even if they would be untimely

standing alone."  *Chin* v. *Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155-56 (2d

Cir. 2012) (quoting *Lambert* v. *Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993),

*abrogated on other grounds*, *Kasten* v. *Saint-Gobain Performance Plastics Corp.*,

563 U.S. 1 (2011)).  However, this doctrine is inapplicable to "discrete acts" of

discrimination, even if such acts are related to conduct alleged in timely filed

---

[5]     Here, too, even if the Court had not dismissed Plaintiff's potential Section 1983 claims on jurisdictional grounds, those based on his suspension would have be dismissed as time-barred.  Similarly to Title VII, there is a statute of limitations associated with Section 1983.  *See Owens* v. *Okure*, 488 U.S. 235, 251 (1989) (applying three-year statute of limitations to Section 1983 claims); *Murray* v. *New York*, No. 24 Civ. 8015 (GHW), 2024 WL 5009955, at *3-4 (S.D.N.Y. Dec. 6, 2024) ("[I]n section 1983 actions, the applicable limitations period is found in the general or residual [state] statute [of limitations] for personal injury actions[.]" (citation and internal quotations marks omitted)).  And as in the Title VII context, this statute of limitations begins to run when a plaintiff receives notice of an adverse employment determination.  *See Delaney* v. *Farley*, 623 F. App'x 14, 16 (2d Cir. 2015) (summary order) (explaining that the statute of limitations period begins to run from "the time of the discriminatory act" (quoting *Chardon* v. *Fernandez*, 454 U.S. 6, 8 (1981)).  Because Plaintiff's claim began to accrue when he received his Notice of Discipline on May 4, 2018, the statute of limitations period for any putative Section 1983 claim expired on May 4, 2021.

charges.  *See Morgan*, 536 U.S. at 115 ("[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period."); *Cabrera* v. *New York City*, 436 F. Supp. 2d 635, 642 (S.D.N.Y. 2006) ("The Second Circuit has repeatedly ruled that 'multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation.'" (citation omitted)).  Such discrete acts can include "termination, failure to promote, denial of transfer, or refusal to hire."  *Edner* v. *NYCTA-MTA*, 134 F. Supp. 3d 657, 665 (E.D.N.Y. 2015).

Nor does the continuing violation doctrine apply merely because "the claimant continues to feel the effects of a time-barred discriminatory act." *Harris* v. *City of New York*, 186 F.3d 243, 250 (2d Cir. 1999).  Rather, this doctrine is only available in cases where the unlawful employment practice "cannot be said to occur on any particular day," but rather "over a series of days or perhaps years," and thus claims are based on the "cumulative effect of [the] individual acts."  *Morgan*, 536 U.S. at 115.  Such circumstances are not alleged here, nor can they be, because Plaintiff received notice of an intended employment decision on a particular day.

Plaintiff has likewise failed to allege that his claims could be subject to equitable tolling.  As the case law clearly establishes, equitable tolling is "only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights."  *Baroor* v. *N.Y.C. Dep't of Educ.*, 362 F. App'x 157, 159 (2d Cir. 2010) (summary order)

(quoting *Zerilli-Edelglass* v. *N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003)).  In order to determine whether equitable tolling is applicable, a district court must consider "whether the person seeking application of the equitable tolling doctrine [i] has acted with reasonable diligence during the time period [he] seeks to have tolled, and [ii] has proved that that the circumstances are so extraordinary that the doctrine should apply."  *Zerilli-Edelglass*, 333 F.3d at 80-81 (internal quotation marks and citation omitted).  By way of example, such circumstances may exist in cases where a plaintiff is "unaware that he has a cause of action because of defendant's fraudulent acts or concealment."  *Bennett* v. *U.S. Lines, Inc.*, 64 F.3d 62, 66 (2d Cir. 1995).  Here, however, Plaintiff has alleged no "exceptional circumstances" that may have prevented him from filing his EEOC complaint in a timely manner.  Accordingly, Plaintiff's Title VII claims, as they relate to the harassment allegations, must be dismissed as untimely.

### 3.    The Court Declines to Grant Leave to Amend

Federal Rule of Civil Procedure 15 mandates that courts "should freely give leave" to amend in the early stages of litigation "when justice so requires." Fed. R. Civ. P. 15(a)(2).  "Leave to amend, though liberally granted, may properly be denied for: 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo* v. *City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman* v. *Davis*, 371 U.S. 178, 182 (1962)).  "[I]t is

within the sound discretion of the district court to grant or deny leave to amend." *Kim* v. *Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (quoting *McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). While Plaintiff has not requested leave to amend here, the Court considers whether it should *sua sponte* grant such relief. *See Safe Step Walk in Tub Co.* v. *CKH Indus., Inc*, 242 F. Supp. 3d 245, 271 (S.D.N.Y. 2017) ("[I]t is within the Court's discretion to *sua sponte* grant leave to amend."). It declines to do so.

Plaintiff has already amended his complaint twice, and both amended complaints were filed after Plaintiff had the benefit of reviewing Defendant's pre-motion letter regarding its anticipated motion to dismiss. (Dkt. #18, 19). Generally, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Baines* v. *Nature's Bounty (NY), Inc.*, No. 23-710, 2023 WL 8538172, at *3 (2d Cir. Dec. 11, 2023) (summary order) (finding no abuse of discretion in denying leave to amend where plaintiffs had "already amended their complaint once in the face of a pre-motion letter from Defendants," and then "requested leave to amend again in a single, boilerplate sentence without specifying what allegations they could add or how amendment would cure any deficiencies").

Moreover, Plaintiff has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this opinion. *See Bank* v. *Gohealth, LLC*, No. 21-1287, 2022 WL 1132503, at *1 (2d Cir. Apr. 18, 2022) (summary order) ("[W]here the plaintiff is unable to

demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." (quoting *Hayden* v. *Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999)); *Horoshko* v. *Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (per curiam) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make the complaint viable and plaintiffs did not request leave to amend); *GateGuard, Inc.* v. *Amazon.com Inc.*, No. 21 Civ. 9321 (JGK), 2023 WL 2051739, at *21 (S.D.N.Y. Feb. 16, 2023) (denying leave to amend where plaintiff "already amended its complaint in response to [Defendant's] pre-motion letter detailing the bases for its anticipated motion to dismiss" and did not seek leave to amend again). Accordingly, and because the Court cannot conceive of how Plaintiff could overcome the pleading deficiencies identified in this Opinion, it denies leave to amend.

## CONCLUSION

Based on the foregoing analysis, Defendant's motion to dismiss is GRANTED. Plaintiff's Title VII claim is dismissed with prejudice, and Plaintiff's remaining claims, which the Court construes as having been brought under 42 U.S.C. §§ 1981 and 1983, the NYSHRL, and the NYCHRL, are dismissed without prejudice. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case. The Clerk of Court is further directed to mail a copy of this Opinion to Plaintiff at his address of record.

SO ORDERED.

Dated:    June 27, 2025
          New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge